UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| **GUIZAR LOZANO** | **CASE NO. 1:25-CV-01611 SEC P** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **SCOTT LADWIG ET AL** | **MAG. JUDGE PEREZ-MONTES** |

MEMORANDUM ORDER

Before the Court is a Motion for Temporary Restraining Order ("TRO") [Doc. No. 2] filed by Petitioner, Alejandro Guizar Lozano ("Petitioner"). Respondents, Scott Ladwig, Kristi Noem, Todd Lyons, and Pamela Bondi (collectively, "Respondents"), oppose the Motion [Doc. No. 12]. Petitioner filed a reply [Doc. No. 13]. After carefully considering Petitioner's filings and applicable law, the Motion is **DENIED**.

I.   Background

Petitioner is a Mexican national, who lives in Knoxville, Tennessee.[1] Twenty-two years ago, while a minor, Petitioner and his family entered the United States on a B-1 visa.[2] They, however, overstayed their visas.[3] In 2011, the Department of Homeland Security ("DHS") issued Petitioner a Notice to Appear, charging him removable for overstaying his visa.[4] In 2013, an Immigration Judge administratively closed Petitioner's removal proceedings after finding Petitioner eligible for Deferred Action for Childhood Arrivals ("DACA").[5] His DACA status has since lapsed.[6]

---

[1] [Doc. No. 1, at ¶ 13].
[2] [Id. at ¶ 19].
[3] [Id.].
[4] [Id. at ¶ 20].
[5] [Id.].
[6] [Id. at ¶ 22].

In 2024, Petitioner was charged in Tennessee state court for drug-related charges.[7] On October 14, 2025, DHS issued a Warrant for Arrest of Alien against Petitioner.[8] The next day, U.S. Immigrations and Customs Enforcement ("ICE") arrested Petitioner at a Tennessee state courthouse when Petitioner went there for a probation-related drug test.[9] DHS filed a motion to re-calendar Petitioner's removal proceedings, pursuant to 8 C.F.R. § 1003.18.[10] Petitioner is "currently detained at the Pine Prairie ICE Processing Center in Pine Prairie, LA," until his reopened removal proceedings conclude, "under 8 U.S.C. § 1229a, before an immigration court."[11]

On October 24, 2025, Petitioner filed a Petition for a Writ of Habeas Corpus ("Habeas Petition"), seeking release from ICE custody on the basis that his arrest and subsequent detention violate his constitutional and statutory rights.[12] The same day, Petitioner also filed this Motion for TRO.[13] Petitioner seeks, in this Motion, that ICE (1) immediately release Petitioner, (2) produce any and all documents related to Petitioner's arrest, and (3) be enjoined from re-detaining Petitioner without an individualized analysis.[14]

Respondents oppose the Motion, arguing (1) this Court lacks jurisdiction over Petitioner, (2) Petitioner does not meet the requirements for a TRO, and (3) since the preliminary relief is identical to the ultimate relief, it should be denied.[15]

---

[7] [Doc. No. 12-3, pp. 3, 7].
[8] [Doc. No. 12-4].
[9] [Id.]; [Doc. No. 1, at ¶ 28].
[10] [Doc. No. 12, p. 8]; [Doc. No. 1, at ¶ 21].
[11] [Doc. No. 12, p. 8].
[12] [Doc. No. 1, pp. 2, 16].
[13] [Doc. No. 2].
[14] [Id. at p. 1].
[15] [Doc. No. 12, p. 9].

The parties briefed all relevant issues, and the matter is ripe.

## II. Law and Analysis

### A. Jurisdiction

Federal courts have limited subject-matter jurisdiction and only possess those powers authorized by the Constitution and federal statutes, which may not be expanded by judicial decree. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Relevant here and as Respondents allege, several provisions of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 bar this Court from exercising jurisdiction over Petitioner.[16] The Court, therefore, first reviews these statutory provisions in turn.

First, is § 1252(a)(5), which states that:

> Notwithstanding any other provision of law (statutory or nonstatutory), including [28 U.S.C. § 2241,] any other habeas corpus provision, and [28 U.S.C. §§ 1361 & 1651], a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal.

8 U.S.C. § 1252(a)(5). In other words, those with "an order of removal" can only seek judicial review of said order by filing "a petition for review with [the] appropriate court of appeals." *Id.*; *see also Duarte v. Mayorkas*, 27 F.4th 1044, 1051 (5th Cir. 2022). Petitioner has no order of removal,[17] so he cannot challenge one. As such, § 1252(a)(5) is inapplicable here.

Second, is § 1252(b)(9), which provides that:

---

[16] [Id. at pp. 10–17].
[17] [Doc. No. 13, p. 4].

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under [28 U.S.C. § 2241,] any other habeas corpus provision, by [28 U.S.C. §§ 1361 & 1651], or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9). The Supreme Court repeatedly held the "targeted language" of "§ 1252(b)(9) does not present a jurisdictional bar where those bringing suit are not asking for review of (1) an order of removal, (2) the decision to seek removal, or (3) the process by which removability will be determined." *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 19 (2020) (citation modified). Again, Petitioner does not seek review of any of the above-enumerated actions. Rather, as his Habeas Petition and reply brief states: "[Petitioner] challenges the lawfulness of his arrest and [ensuing] detention."[18] As such, § 1252(b)(9) also does not apply.

Lastly, Respondents cite § 1252(g), which says:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including [28 U.S.C. § 2241,] any other habeas corpus provision, and [28 U.S.C. §§ 1361 & 1651], no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).

---

[18] [Id. at p. 5]; [Doc. No. 1, p. 16].

Respondents argue since Petitioner is challenging his arrest and ensuing detention, his claims "arise from" the "decision and action" to "commence proceedings."[19] That may be true. But the Fifth Circuit holds that § 1252(g) protects from judicial interference "the Attorney General's long-established discretion to decide *whether and when* to prosecute or adjudicate removal proceedings or to execute removal orders." *Cardoso v. Reno*, 216 F.3d 512, 517 (5th Cir. 2000) (emphasis added) (quoting *Alvidres–Reyes v. Reno,* 180 F.3d 199, 201 (5th Cir.1999)). Thus, although Petitioner is attacking his arrest—which stems from the decision to commence proceedings—he is attacking the manner of his arrest and not the decision to arrest. Hence, § 1252(g) also does not bar this Court's jurisdiction.

Since none of the provisions Respondents cite, suggesting this Court lacks jurisdiction, applies, the Court concludes it has jurisdiction over Petitioner's claims.

### B. TRO

Having concluded that the Court has jurisdiction to hear the parties' claims, the Court now turns to Petitioner's Motion for a TRO. Federal courts may issue a TRO *ex parte* only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED. R. CIV. P. 65(b).

---

[19] [Doc. No. 12, pp. 13–14].

When the adverse party has notice, however, a TRO may be treated as a preliminary injunction. *See Butts v. Aultman*, 953 F.3d 353, 361 n.6 (5th Cir. 2020) ("If there is an adversary hearing, or the order is entered for an indeterminate length of time, a 'temporary restraining order' may be treated as a preliminary injunction.") (citation modified). Here, Respondents have notice of Petitioner's Motion, so the Court analyzes the Motion under the preliminary injunction framework.

When considering whether to issue a preliminary injunction, lower courts must follow the four-part test from *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008). Parties "seeking a preliminary injunction must establish (1) that they are likely to succeed on the merits, (2) that they are likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in their favor, *and* (4) that an injunction is in the public interest." *Id.* at 20 (citation modified).

### 1. Likelihood of Success on the Merits

Petitioner argues his arrest and detention violate several constitutional and statutory rights.[20] The Court analyzes each in turn.

#### a. First Amendment Retaliation

Petitioner's first claim is that the government arrested him in retaliation for publicly criticizing the Trump administration's immigration policies.[21] "Petitioner's speech and membership" is self-avowedly "pro-immigrant[] and anti-ICE."[22]

---

[20] [Doc. No. 2-2, pp. 5–11].
[21] [Id. at p. 6].
[22] [Doc. No. 1, at ¶ 43].

### i. Framework

The First Amendment "prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech. If an official takes adverse action against someone based on that forbidden motive, and non-retaliatory grounds are in fact insufficient to provoke the adverse consequences, the injured person may generally seek relief by bringing a First Amendment claim." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (citation modified).

To prove First Amendment retaliation, Petitioner must show: (1) he engaged in constitutionally protected activity, (2) Respondents actions injured him such that a person of ordinary firmness would be chilled from engaging in that activity, and (3) Petitioner engaging in his constitutionally protected activity substantially motivated Respondents' retaliatory actions. *See Bailey v. Ramos*, 125 F.4th 667, 684–85 (5th Cir. 2025). Under *Nieves*, plaintiffs must also show the defendant had no probable cause to arrest the plaintiff. 587 U.S. at 404. Only then may courts analyze the substantial motivation prong. *See id.* But *Nieves* exempts the "no-probable cause" requirement when "officers have probable cause to make arrests but typically exercise their discretion not to do so." *Id.* at 406. A plaintiff must present "objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.* at 407 (citations omitted).

Petitioner argues—for the first time in his reply—that the Court should not require him to show Respondents had no probable cause to arrest him, following the Ninth Circuit's approach in *Bello-Reyes v. Gaynor*, 985 F.3d 696, 700 (9th Cir. 2021).[23]

---

[23] [Doc. No. 13, pp. 5–6].

In *Bello-Reyes*, the Ninth Circuit ruled the plaintiff did not need to show the defendants had no probable cause for his immigration bond revocation. *Id.* at 700. The Ninth Circuit so ruled for two reasons. First, the Ninth Circuit noted that unlike *Nieves*, which arose from a § 1983 claim, *Bello-Reyes* involved a habeas petition. *Id.* at 701. And while it is necessary, in § 1983 suits, "to identify the particular state official or officials who violated the plaintiff's constitutional rights," not so in habeas. *Id.* (citing 42 U.S.C. § 1983). Since a habeas petitioner "need not identify a particular violator, only that his confinement is unconstitutional," the Ninth Circuit deemed the "problems of causation that may counsel for a no-probable cause standard are less acute in the habeas context." *Id.* at 700–01.

Second, the Ninth Circuit noted that while "a probable cause requirement exists for initial immigration arrests," there is "no equivalent benchmark" when "ICE is revoking bond rather than arresting in the first instance." *Id.* at 701. (citations omitted). Since there was no objective benchmark for bond revocations, which are fully discretionary, the Ninth Circuit concluded that those whose immigration bond was revoked could never be released on habeas if they were required to show no-probable cause. *Id.* (footnote omitted). The Court finds *Bello-Reyes* unconvincing.

First, while Petitioner need not identify a particular official (who violated Petitioner's rights) in the habeas context, he must still show that engaging in constitutionally protected activity was the but-for cause for the Respondents to arrest him. *Bailey*, 125 F.4th at 685. Thus, the same "problems of causation" that exists in § 1983 contexts also appear in the habeas context. *Bello-Reyes*, 985 F.3d at 700.

Page **8** of **18**

Second, unlike *Bello-Reyes*, involving a petitioner subject to bond revocation, this case involves Petitioner's arrest, which involves 8 U.S.C. § 1357.[24] *Id.* at 701. And even the *Bello-Reyes* court noted that § 1357 has a probable cause requirement. *Id.* Thus, the two factors considered by the *Bello-Reyes* court are unsound or inapplicable.

Third—and most importantly—*Bello-Reyes* is on a collision course with *Nieves*. *Nieves* lays the general framework to establish First Amendment retaliatory arrest claims. And while that suit was brought using § 1983, this Court does not see why the same claim would have a different framework solely due to a different cause of action. *Nieves*—and *Gonzalez v. Trevino*—suggest the same. 602 U.S. 653 (2024). In *Gonzalez*, the Court reiterated that *Nieves* "recognized *a narrow exception* to [the no-probable cause] rule. The existence of probable cause does not defeat a plaintiff's claim if he produces 'objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been.'" *Id.* at 655 (emphasis added) (quoting *Neives*, 587 U.S. at 407). This language does not suggest First Amendment retaliatory arrest elements differ based on the cause of action. And "when the highest court in the country has spoken clearly on a matter of federal constitutional law," this Court "is not at liberty to disregard or parse that decision" in an inconsistent way. *W. Tradition P'ship, Inc. v. Att'y Gen. of State*, 271 P.3d 1, 19 (Mont. 2011) (Nelson, J., dissenting), *cert. granted, judgment rev'd sub nom. Am. Tradition P'ship, Inc. v. Bullock*, 567 U.S. 516 (2012).

For these reasons, this Court declines to follow *Bello-Reyes* here.

---

[24] [Doc. No. 2-2, pp. 10–11]; [Doc. No. 12, pp. 9–10, 19–20].

### ii. Petitioner's Retaliatory Arrest Claim

To reiterate, Petitioner must show, to prevail on his retaliatory arrest claim: (1) he was engaged in constitutionally protected activity, (2) Respondents arrested him, (3) Respondents had no probable cause to arrest Petitioner or would not have arrested other similarly situated individuals who did not engage in such constitutionally protected activity, and (4) Petitioner engaging in his constitutionally protected activity was the but-for cause of his arrest. *See Bailey*, 125 F.4th at 684–85; *Neives*, 587 U.S. at 406–07.

Petitioner easily satisfies the first two prongs of his retaliatory arrest claim. Petitioner spoke out about immigrant rights, anti-ICE views, and using non-violent methods to change the law.[25] Petitioner's speech and memberships are on core matters of public concern, which "is at the heart of the First Amendment's" protection. *Snyder v. Phelps*, 562 U.S. 443, 451 (2011) (citation modified). Thus, Petitioner engaged in constitutionally protected activity. And the filings show Respondents arrested Petitioner.[26] So, the Court's focuses on whether Respondents had probable cause and whether Petitioner's advocacy was the but-for cause of his arrest.

Respondents produced an immigration warrant signed a day before Petitioner's arrest, showing DHS had "probable cause to believe that [Petitioner] is removable from the United States."[27] Furthermore, Respondents aver that Petitioner was arrested to place him in removal proceedings.[28]

---

[25] [Doc. No. 2-2, p. 6].
[26] [Doc. No. 12, p. 8].
[27] [Doc. No. 12-4].
[28] [Doc. No. 12, p. 8].

Petitioner provides no evidence showing Respondents had no probable cause to arrest him. Rather, as stated earlier, Petitioner only argues that *Nieves* probable cause requirement should not be required.[29] Nevertheless, Petitioner could overcome *Nieves* general rule "if he produces 'objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been.'" *Gonzalez*, 602 U.S. at 655 (quoting *Neives*, 587 U.S. at 407). But Petitioner has not done so. Even if he does, the existence of probable cause that Petitioner was unlawfully present in the United States means that Petitioner's advocacy could not be the but-for cause of his arrest. As such, Petitioner's retaliatory arrest claim is not likely to succeed on the merits.

### b. Section 1357 Warrantless Arrest Violation

Petitioner's second claim is that his arrest violates statutory warrant requirements.[30] Officers and employees of the Immigration and Naturalization Service may arrest aliens without a warrant only if (1) they see an alien "entering or attempting to enter the United States in violation of" the law, or (2) they have reason to believe the arrested alien is in the United States in violation of the law and "is likely to escape before a warrant can be obtained." 8 U.S.C. § 1357(a)(2). Respondents have presented a warrant for Petitioner's arrest.[31] In response, Petitioner "waives" that claim.[32] So, that claim is now moot.

---

[29] [Doc. No. 13, pp. 5–6].
[30] [Doc. No. 2-2, pp. 10–11 (citing 8 U.S.C. § 1357(a)(2))].
[31] [Doc. No. 12-4].
[32] [Doc. No. 13, p. 1 n.3].

### c. Immigration and Nationality Act ("INA") and Regulatory Violations

Petitioner's third argument is that his arrest violates the INA and its implementing regulations.[33] Specifically, Petitioner argues that since DHS released him on bond in 2011,[34] his instant arrest effectively revokes the 2011 bond without an individualized assessment, as required by 8 U.S.C. § 1226(b) and 8 C.F.R. § 1236(c)(9).[35]

Respondents counter that Petitioner was arrested and is being detained under § 1226(c)(1)(A),[36] which states that the U.S. Attorney General shall take into custody any alien who:

> [I]s inadmissible by reason of having committed any offense covered in [8 U.S.C. § 1182(a)(2)] . . . when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c)(1)(A). Among the offenses listed in § 1182(a)(2) is the "violation of . . . any law or regulation of a State, the United States, or a foreign country relating to a controlled substance." *Id.* § 1182(a)(2)(A)(i)(II). Respondents point to Petitioner's 2024 Tennessee state court conviction for possession of methamphetamine.[37] Petitioner does not respond to these arguments but continues to aver that his bond revocation violates § 1226(b) and § 1236(c)(9).[38]

---

[33] [Doc. No. 2-2, pp. 9–10]. Petitioner intertwines this claim with his Fifth and Fourteenth Amendment due process violation claims [Id.], but the Court reviews them separately for clarity.
[34] [Doc. No. 1, p. 5].
[35] [Doc. No. 2-2, p. 9].
[36] [Doc. No. 12, p. 18].
[37] *See* [Doc. No. 12-3, pp. 3, 7].
[38] [Doc. No. 13, pp. 6–7].

The record appears clear. Respondents took Petitioner into custody, without regard to his prior bond, because he violated state drug laws and is therefore, removable under § 1226(c). As such, Petitioner has not shown a likelihood of success on his third claim either.

### d. Constitutional Due Process Violations

Petitioner's fourth—and final—claim is that his detention violates the Due Process Clauses of the Fifth and Fourteenth Amendments.[39] Petitioner's reply brief, however, later states "he does not move for emergency relief" on Fourteenth Amendment grounds.[40] Nevertheless, this argument may be easily disposed as the Fourteenth Amendment's Due Process Clause clearly states that it is applicable to the states and not the federal government. *See* U.S. CONST. amend. XIV, § 1 ("[N]or shall any *State* deprive any person of life, liberty, property, without due process of law."). So, the Court now turns to Petitioner's Fifth Amendment due process claims.

Petitioner argues his detention violates his Fifth Amendment rights because Respondents' decision to revoke his bond was arbitrary and without and individualized assessment.[41] This argument is mistaken, however, because as stated above, Respondents are detaining Petitioner pursuant to § 1226(c), which applies irrespective of whether an alien was formerly released. *See* 8 U.S.C. § 1226(c)(1).

Petitioner also argues—for the first time in his reply brief—this Court should, under *Mathews v. Eldridge*, order a pre-deprivation hearing.[42] The Court disagrees.

---

[39] [Doc. No. 2-2, pp. 9–10].
[40] [Doc. No. 13, p. 1 n.3].
[41] [Doc. No. 2-2, p. 9].
[42] [Doc. No. 13, p. 7 (citing 424 U.S. 319, 335 (1976))].

The "Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Denmore v. Kim*, 538 U.S. 510, 517 (2003). *Mathews* sets a three-factor balancing test for courts to consider when resolving procedural due process claims: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest . . . and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

Petitioners asserts, as to the first factor, that his liberty interest—freedom from custody—is fundamental.[43] As to the second factor, Petitioner asserts that a pre-deprivation hearing protects against meaningless detention, which is what he alleges is occurring here.[44] And, as to factor three, Petitioner asserts requiring Respondents to conduct a pre-deprivation hearing causes Respondents little burden.[45]

Petitioner is an alien who not only violated federal immigration laws but also state criminal laws.[46] He is being detained—and deprived of his liberty—for that reason. Furthermore, he will receive a hearing as part of his removal proceedings. *See* 8 U.S.C. § 1229a. As such, requiring Respondents provide a pre-deprivation hearing when it is clear Petitioner is detained pursuant to the law would be an unnecessary additional burden. The Court declines to impose such a burden and therefore, Petitioner is unlikely to succeed on this claim as well.

---

[43] [Id. at pp. 7–8].
[44] [Id. at p. 8].
[45] [Id.].
[46] [Doc. Nos. 12-1; 12-3].

Thus, the Court concludes none of Petitioner's claims are likely to succeed on the merits.

### 2. Irreparable Harm

Petitioner alleges he faces irreparable harm—loss of liberty—by his prolonged, unlawful detention.[47] Respondents counter that Petitioner's alleged harm is inherently a part of detention.[48] Respondents also aver that the relief sought through the TRO is the same as that sought in the Habeas Petition and there is no irreparable harm since Petitioner's detention while his Habeas Petition is adjudicated does not hinder the Court's "ability to render a meaningful decision on the merits."[49] Petitioner responds that the preliminary relief sought is not duplicative and the Court can "preserve [Petitioner's] status quo" by releasing him until the Court determines, in the Habeas Petition, whether Petitioner's arrest and detention is lawful.[50]

The Supreme Court, very recently, reminded lower courts that preliminary relief, as its name suggests, preliminary and should "not conclusively resolve legal disputes." *Lackey v. Stinnie*, 604 U.S. 192, 200 (2025). In other words, they should not be used to rule on the final, merits question.

Rather, TROs and preliminary injunctions help "preserve the status quo until a trial" or other final disposition is rendered. *Id.* at 193. That begs the question: what does it mean to preserve the status quo? While the words "status quo" do not appear within Rule 65 or the *Winters* factors, it is implicit in the "irreparable harm" prong.

---

[47] [Doc. No. 2-2, pp. 11–13].
[48] [Doc. No. 12, p. 21].
[49] [Id. at p. 22 (quoting *Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974))].
[50] [Doc. No. 13, pp. 9–10].

Courts sometimes describe irreparable harm as those injuries, which "cannot be undone through monetary remedies." *Interox Am. v. PPG Indus., Inc.*, 736 F.2d 194, 202 (5th Cir. 1984) (citation omitted). But that is only one side of the coin. Irreparable harm must also take away "the court's ability to render a meaningful decision on the merits." *Callaway*, 489 F.2d at 573; *see also* Samuel L. Bray, *The Purposes of the Preliminary Injunction*, 78 Vand. L. Rev. 809, 823–26 (2025) (concluding the same after probing Founding-era sources). Put differently, "[t]here is always a status quo. There should not be a preliminary injunction to protect it, however, unless the court's ability to render a meaningful decision on the merits would otherwise be in jeopardy." *Callaway*, 489 F.2d at 573.

Here, Petitioner seeks the same relief in his Habeas Petition and TRO—release from custody.[51] Liberty is inarguably the most paramount natural right. And true, the Fifth Circuit has held even momentary loss of a right constitutes irreparable injury. *See Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 295 (5th Cir. 2012) (citation omitted) But context matters. In *Opulent Life Church*, the plaintiff leased property for a new church but was denied a renovation permit by the defendants. *Id.* at 283. The Fifth Circuit found the defendant's act caused irreparable harm because the plaintiff would "lose its lease if it is not allowed to operate in its leased property." *Id.* at 297. So, a final ruling on the merits would be too little, too late. Again, the inquiry is whether the facts suggest a final ruling would not grant a plaintiff the prayed-for relief. *See Callaway*, 489 F.2d at 573.

---

[51] [Doc. No. 1, p. 16]; [Doc. No. 2-2, p. 14].

Page **16** of **18**

Petitioner makes no showing that he faces imminent removal or the existence of something else that would make a favorable ruling on the Habeas Petition too little, too late. As such, Petitioner cannot show irreparable injury.

Petitioner cites, in his reply brief, several cases to support his argument that preserving the "status quo" means returning him to his "last uncontested status which preceded the pending controversy."[52] The Court finds these unpersuasive, especially since they clash with binding Fifth Circuit precedents such as *Callaway* and *Opulent Life Church*.

Accordingly, the Court finds Petitioner has also failed to meet the second *Winter* factor, necessary for the Court to issue a TRO.

### 3. Balance of Equities and Public Interest

The balance of the equities and the public interest factors "merge when the Government is the opposing party." *Clarke v. Commodity Futures Trading Comm'n*, 74 F.4th 627, 643 (5th Cir. 2023) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)). These factors indisputably favor Respondents as the government and the public have a strong interest in immigration laws being adequately enforced. *Landon v. Plasencia*, 459 U.S. 21, 34 (1982). And Petitioner has not shown he is likely to succeed on any of his theories that his detention is unlawful. Thus, Petitioner's proffered public interest—"ensuring the government does not unduly hamper the right to free speech"—is not seriously threatened.[53] As such, *Winter*'s third and fourth factors also favor not granting Petitioner a TRO.

---

[52] [Doc. No. 13, pp. 9–10 (citations omitted)].
[53] [Doc. No. 2-2, p. 13].

### C. Bond Security and Attorney's Fees

Since the Court does not find Petitioner is authorized a TRO, it does not address Petitioner's request for attorney's fees under the Equal Access to Justice Act,[54] or Respondents' request that Petitioner pay a bond security.[55] "If it is not necessary to decide more, it is necessary not to decide more." *PDK Labs., Inc. v. United States DEA,* 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in judgment).

### III. Conclusion

For all these reasons,

**IT IS ORDERED** that Petitioner's Motion for a Temporary Restraining Order [Doc. No. 2] is **DENIED**.

MONROE, LOUISIANA, this 30th day of December 2025.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE

---

[54] [Id. at p. 24].
[55] [Doc. No. 12, pp. 23–24].